UNITED STATES

v.

**Technical Sergeant Tommy L. ROBERTSON, FR449–84–6693, United States Air Force.**

**ACM 28955.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 29 Aug. 1990.

Decided 11 June 1992.

---

Appellate Counsel for the Appellant: Colonel Jeffrey R. Owens and Major Bernard E. Doyle, Jr.

Appellate Counsel for the United States: Colonel William R. Dugan, Jr., Lieutenant Colonel Brenda J. Hollis, Major Paul H. Blackwell, Jr., and Major Morris D. Davis.

Before LEONARD, RIVES, and JAMES, Appellate Military Judges.

## OPINION OF THE COURT

JAMES, Judge:

Technical Sergeant Robertson was convicted of having used cocaine.[1] On review he appeals two rulings on evidence, the instructions on findings, and the effectiveness of the post-trial representation he received. We find errors but no prejudice, and we affirm.[2]

### I. Impeachment By Arrest

■ Sergeant Robertson called his female housemate (a platonic friend) to establish his defense that his ingestion of cocaine was innocent, without knowledge and unintentional. She admitted to having been a user of cocaine. According to her, she bought for herself the cocaine that Sergeant Robertson eventually ingested, panicked at the sight of police, and poured it all into a can of beer that she had. She said that she went home with the beer, left it unattended, and that Sergeant Robertson drank the beer, not knowing what was in it. Trial counsel sought to impeach her:

> TC: Now, you've had some problems with honesty before, haven't you ... ?
>
> Wit: No.
>
> TC: Do you remember back in September of '84, having some problems—you were arrested for conspiracy to commit fraud, and attempted burglary?
>
> Wit: I'd rather—I plead the Fifth on that. I don't want to have anything—answer anything about my past that doesn't have anything to do with this case.
>
> TC: Motion to strike this witness' testimony.

The motion to strike led to discussion of the admissibility of the answer sought. Trial counsel maintained (as we understand his remarks) that the arrest was evidence of "some problems with honesty" and would show that the witness' denial was false. Accordingly, trial counsel denied any intent to impeach under Mil.R.Evid. 609 by showing a prior conviction. In his view, the prior *arrest* was evidence of a specific instance of conduct by the witness into which he was permitted to inquire un-

1. Article 112a, UCMJ, 10 U.S.C. § 912a (1988). Sergeant Robertson was sentenced by the general court-martial, composed of members, to be discharged from the service with a bad-conduct discharge, to be confined for 6 months, to forfeit all pay and allowances for 6 months, and to be reduced to E–1. The sentence was approved as adjudged.

2. Sergeant Robertson also invites our attention to the denial of a challenge for cause. We find no abuse of discretion. *See United States v. Jobson,* 31 M.J. 117, 122 (C.M.A.1990).

der Mil.R.Evid. 608(b). Of course, just as the defense counsel noted, the *arrest* is not an instance of conduct by the witness; it is conduct by the authorities.[3] The defense entered a specific objection during the discussion, belatedly but nonetheless timely enough to preserve the issue. *See* Mil. R.Evid. 103(a). The military judge overruled the objection. The question was posed anew, and the witness answered:

> TC: ... I asked you if you didn't think that having been arrested in September of 1984 for conspiracy to commit fraud would be something involving honesty and truthfulness. I ask you that again?
>
> Wit: No.

■ Now, in the peaceful and orderly review of the transcript on appeal, it is clear that the objection should have been sustained, and it was error to permit the question.[4] An arrest is *governmental* conduct, not conduct of the witness, and it says nothing about the witness' credibility.[5] The extent to which a witness may be impeached is within the discretion of the trial judge, *United States v. Tyler*, 26 M.J. 680, 681–82 (A.F.C.M.R.1988), *aff'd*, 28 M.J. 253 (C.M.A.1989), *cert. denied*, 493 U.S. 814, 110 S.Ct. 62, 107 L.Ed.2d 29 (1989), and the same standard applies to methods of impeachment, *see United States v. Brenizer*, 20 M.J. 78 (C.M.A.1985). The logical connection between credibility and an arrest is so distant that we hold that it is an abuse of discretion to permit a witness to be impeached by evidence of a mere arrest or, in military parlance, apprehension.

■ Having found error, we must determine whether any material prejudice to a substantial right resulted. Article 59(a), UCMJ, 10 U.S.C. § 859(a) (1988). We conclude that it did not. First, the witness answered the question and denied the embedded assertion. Thus, if we trust court

---

3. Apparently trial counsel, Captain J. Bryan Howell, never grasped the significance of the distinction. He had no evidence of a conviction or of the underlying conduct by the witness, if any. When asked whether he did, he twice referred to the process as a game, once saying, "If we're going to play these stupid little games, we can do it the whole schmear." We do not regard the application of the President's rules of evidence to events at a felony trial as games of any sort. However, we recall the stresses of trials, and we notice that neither the ABA Model Rules of Professional Conduct, rule 3.5 and commentary, nor its corollary, Air Force Rules of Professional Responsibility, rule 3.5 (4 December 1989), include such unfortunate phraseology as misconduct. Nonetheless, Captain Howell's remarks added nothing to his argument and detracted from the dignity of this trial. *See also* Air Force Regulation 111–1, "Military Justice Guide," para. 12–16 (30 September 1988).

Mere seconds later, Captain Howell sought to impeach the same witness by showing that her testimony was inconsistent with a statement she made earlier to police. He unnecessarily asked her whether she recalled telling the officer that Robertson "had slapped her," too. The defense moved in limine to foreclose any further such revelations, and the military judge asked for trial counsel's comments on the motion:

> MJ: [Summing up] Okay, so you want to restrict the government. Trial counsel, what's your response?
>
> TC: Well, why don't we just let them ask my questions for me?

Taking the reply in context, without the benefit of inflection, we give Captain Howell the benefit of the doubt and assume that his rhetorical question was simply a forensic device to emphasize his disagreement with the defense motion, which he then stated. Even so, it was in poor taste and uncivil. Military judges must intervene to assure that trials are conducted by the professional members of courts-martial with the dignity that our tradition deserves. R.C.M. 801(a)(2), (3).

4. Trial counsel's subtle change, soliciting agreement that such an arrest would affect trustworthiness, is transparent and does not affect our view.

5. The underlying conduct of the witness might have, but trial counsel was apparently unable to address it. *Cf. United States v. Wilson*, 12 M.J. 652, 653 (A.C.M.R.1981) ("The Article 15 [punishment imposed for the underlying misconduct] ... represents an accusation of misconduct and a determination by the commanding officer that the misconduct occurred even when it may not in fact have taken place...."). Both the distinction between arrest and misconduct and the inappropriateness of impeachment by arrest are discussed well at IIIA J. Wigmore, *Wigmore on Evidence* § 980a (Chadbourn rev. 1970). Of course, a *conviction* does say something about a witness. That is why Mil.R.Evid. 609 exists. We find facetious trial counsel's theory that he might do under Mil.R.Evid. 608 what he obviously was unprepared to do under Mil.R.Evid. 609.

members at all to discriminate between counsels' questions and witnesses' answers, we must conclude that any error in permitting the question was nullified by the answer. Second, we note that this witness' credibility was limited by other aspects of the case. She confessed to having been a frequent abuser of drugs and alcohol. She was accused of having often taken Sergeant Robertson's car without permission, and he wanted her to move out of the house in which they resided together because of her behavior. She does not appear from the record—ignoring the prior arrest—to be a person of pure character. Instead, her testimony needed help to be credible. As we see below, the converse happened: Other, internal defects in the defense case detracted from its credibility. This error was harmless.

## II. Character for Truthfulness

■ Sergeant Robertson called another resident of the house in which he lived, and she was asked about his character:

DC: Have you had the opportunity to ever see or hear about Sergeant Robertson ever using any type of drugs?

Trial counsel objected that the inquiry sought to prove character by specific acts and that it did not focus on a trait of character in controversy, both in violation of Mil.R.Evid. 405(a). The military judge sustained the objection and invited the defense to rephrase, and it did, first eliciting the witness' relationship with Sergeant Robertson. In the course of her reply, the witness volunteered:

Wit: .... And even though he was so deadset against people on drugs—

TC: We renew our objection, your honor.

MJ: Objection sustained. Members, disregard that testimony as to specific instances of conduct. [Defense counsel], lay the foundation and elicit another opinion, or testimony as to the accused's reputation for a pertinent character trait.

The defense then turned from Sergeant Robertson's attitude about insobriety to his character for honesty. That inquiry was properly foreclosed without objection because he had not yet testified.

On appeal Sergeant Robertson argues by analogy to decisions that hold admissible one's good military character and character for the trait of being law-abiding. *See United States v. Hurtt,* 22 M.J. 134 (C.M.A.1986) (good military character admissible in NCO's trial for drug offenses); *United States v. Clemons,* 16 M.J. 44 (C.M.A.1983) (good military character admissible when accused, charge of quarters, sought to teach subordinates a lesson). *See generally United States v. Wilson,* 28 M.J. 48, 49 n. 1 (C.M.A.1989) (collects cases). Nothing resembling good military character is involved here, but the testimony sought, volunteered, and excluded is analogous to "law-abiding-ness." We can tell only a little of what would have been elicited, *cf.* Mil.R.Evid. 103(a)(2), but we are confident that the witness would have testified that she believed Sergeant Robertson to be intolerant of drug abuse and abusers. That trait of character would have been relevant as tending to make more probable the defense theory that his ingestion was innocent. We will assume that the inquiry should have been permitted.

We still find no harm. Article 59(a), UCMJ, 10 U.S.C. § 859(a) (1988). Our conclusion results from the four-factor analysis in *United States v. Weeks,* 20 M.J. 22, 25 (C.M.A.1985). The evidence did put Sergeant Robertson's credibility, "law-abiding-ness," and sobriety in contest, but one witness's opinion would not have tipped the scales; the contest was settled by inconsistencies in Sergeant Robertson's own account and by the inconsistency of his version with the science explained by the prosecution's toxicologist. A little bolstering of Sergeant Robertson's credibility would have been nice, but it would never have made the difference. Thus, while the prosecution's case was not conclusive, it was strong, and the defense theory was enfeebled by its internal defects. Even though there was no substitute for the excluded testimony, its quality was hardly pivotal. Accordingly, relief is not warranted.

## III. The Instructions

■ Sergeant Robertson contends that the military judge's instructions to the members on how to deal with permissible inferences of wrongfulness were flawed. Perhaps they were, but any error in those instructions was waived by the failure of the accused to assert it below or to propose alternative instructions. R.C.M. 920(f); *United States v. Smith*, 34 M.J. 200 (C.M.A.1992) (decided recently, well after this case was briefed). We have compared the posture of this case and the instructions in it to those in *Smith*, and we find them to be virtually identical. Accordingly, there is no plain error here that would excuse the appellant from the consequences of his waiver. *Id.*

## IV. Post–Trial Representation

■ Finally, Sergeant Robertson asserts that he was denied his Sixth Amendment right to counsel because he did not have the effective assistance of counsel's representation after trial. We agree, but we find no prejudicial effect.

The results of a court-martial are examined by the commander who convened the court-martial, and that commander has the responsibility for acting on the sentence, approving it as adjudged, reducing it, or disapproving it altogether. Article 60, UCMJ, 10 U.S.C. § 860 (1988); R.C.M. 1107. The accused may submit "matters for consideration" to the convening authority, which typically ask clemency but may also include claims of legal error. Article 60(b), UCMJ, 10 U.S.C. § 860(b) (1988);

R.C.M. 1105. Furthermore, the commander has the recommendations of his staff judge advocate, and the accused is entitled to comment on those recommendations. R.C.M. 1106(f). The accused has (in this case) 10 days from the service of the record of trial or of the recommendations (whichever is later) in which to reply, and the commander may, for good cause shown, extend the period for 20 days. Article 60(b), UCMJ, 10 U.S.C. § 860(b) (1988); R.C.M. 1105(c)(1), 1106(f)(5).

During trial the military judge asked which defense counsel would be handling the post-trial representation, and the civilian defense counsel replied, "At this time, your honor, I will." When the government sought to serve the recommendations on both the civilian and the detailed military defense counsel, the military lawyer refused to be served.[6] The 10–day period began running in this case upon service of the recommendations upon the civilian defense counsel on 28 September 1990, and it would have expired on 9 October 1990, the first business day after the 10 days elapsed. Defense counsel asked an extension of about 36 days until 15 November 1990. The request was granted in part, giving counsel until 17 October. During the period, Sergeant Robertson filed 17 pages of comments on the trial, to which the staff judge advocate replied in his addendum, *see* R.C.M. 1106(d)(4), but the defense counsel never filed anything.[7] Though Sergeant Robertson signed the universal request for appellate representation, no one assigned any errors in the space

6. We do not understand such a reaction. The agreements between co-counsel delineating who will do what do not relieve either from vulnerability to service of notices required by law. While R.C.M. 1106(f)(2) sets an order in which the required service must be sought, it does not prohibit the government's effort to serve all counsel. Such an effort to do more than is required is commendable. While the unnecessary service might have no legal consequence, it helps assure that the accused is best helped by his counsel.

7. There are papers filed with the record after it was received at the Office of The Judge Advocate General but not moved by either party on

appeal. Accordingly, we have not regarded them as part of this record, and we have not considered them. Were we to consider them, they would explain that the staff judge advocate's reply to the request for an extension was received at civilian defense counsel's office but filed by his secretary, who did not bring it to his attention. He maintains that he thought all was well, but such a posture is inconsistent with the notice provided to him by Article 60, UCMJ, 10 U.S.C. § 860 (1988); R.C.M. 1105(c)(1), 1106(f)(5), and the written advice to Sergeant Robertson dated 29 August 1990 and on which the civilian defense counsel was listed as an intended recipient of an information copy.

provided on that form.[8]

■ There is no doubt that the right to effective assistance of counsel continues after trial. *See, e.g., United States v. Calderon*, 34 M.J. 501 (A.F.C.M.R.1991). Civilian counsel need not be competent in every aspect of military criminal law before they accept a client whose case will be tried by a court-martial: "A lawyer can provide adequate representation in a wholly novel field through necessary study. Competent representation can also be provided through the association of a lawyer of established competence in the field in question." ABA Model Rules of Professional Conduct, commentary accompanying rule 1.1 (1983). Nevertheless, it is apparent to us that the defense counsel in this case failed to provide competent post-trial representation. *See also id.,* rule 1.3 (diligence).

Instead, the civilian defense counsel, who had performed respectably at trial, apparently made no effective efforts to learn about the post-conviction procedures. His request for an extension of time, for example, asked a period greater than that permitted by the statute, and it is phrased in the language of a civilian's request for permission to file notice of an appeal. Nothing in the record permits us to infer that Sergeant Robertson had the benefit of consultation with competent counsel and chose, as a matter of strategy, to remain silent. Instead, every indication suggests that this valuable opportunity was lost because the civilian defense counsel didn't know what he was doing.

The detailed military defense counsel appears to have abandoned his client after trial, but we cannot be certain. It is true, for example, that "[a] lawyer may limit the objectives of the representation if the client consents after consultation." Air Force Rules of Professional Responsibility, rule 1.2(c) (4 December 1989); *accord,* ABA Model Rules of Professional Conduct, rule 1.2(c) (1983). However, in military practice there is a very strong theme that defense counsel's representation must continue through the post-trial activities until counsel is succeeded. *See, e.g., United States v. Palenius*, 2 M.J. 86, 92–93 (C.M.A.1977) ("fragmented, noncontinuous representation," "maintain the attorney-client relationship ... until ... appellate counsel have been designated and have commenced the performance of their duties"). It appears to us that military defense counsel quit too soon. At the very minimum, he should have assured that the civilian defense counsel was acquainted with the procedure and aware of the time limits for the post-trial submissions and responses.

We need not reach any conclusions of fact or law about military counsel's performance to dispose of this case, for it is clear that Sergeant Robertson did not get the representation to which he was entitled after trial. This situation did not become clear to the staff judge advocate and convening authority until after action had been taken. After that point, it became impossible for the convening authority to fix the problem without our intervention. *See* R.C.M. 1107(g).

Accordingly, we hold that the failure of the defense counsel to give timely assistance to Sergeant Robertson in the preparation of his post-trial submissions to the convening authority under Article 60 constituted ineffective assistance of counsel. However, the inquiry does not end there. As we discussed in *Calderon*, 34 M.J. at 504–505, we must examine the events to see whether there was any prejudicial effect.

■ An appellant who complains of ineffective assistance bears the burden of showing that the ineffectiveness prejudiced him. *See generally United States v. Barnard*, 32 M.J. 530 (A.F.C.M.R.1990), *pet. denied*, 33 M.J. 484 (C.M.A.1991). Despite the present assistance of appellate counsel, Sergeant Robertson has not brought to our attention what other matters he would have submitted to the convening authority, had he been helped as he should have been. *Cf. United States v. Curry*, 31 M.J. 359, 376–77 (C.M.A.1990); *United States v. Rogers*, 21 M.J. 435, 437, 439 (C.M.A.1986); *United States v. Smart*, 21 M.J. 15, 18

---

**8.** Regretably, the large space provided for that purpose rarely has any entries.

(C.M.A.1985); *Calderon,* 34 M.J. at 504. He has not informed us that he instructed his counsel to prepare or submit anything. *Cf. Curry,* 31 M.J. at 376–77. We have examined the matters that Sergeant Robertson submitted, and they raise nothing which would have been likely to result in any relief from the convening authority. *Cf. United States v. Reddick,* 32 M.J. 967, 968 (A.C.M.R.1991), *pet. denied,* 34 M.J. 68 (C.M.A.1991). We have also examined the entire record for legal error, factual sufficiency, and matters affecting the appropriateness of the sentence, as we always must, Article 66(c), UCMJ, 10 U.S.C. § 866(c) (1988), and we found nothing which we think would have warranted any relief had they been brought to the convening authority's attention. Accordingly, we conclude that Sergeant Robertson has not sustained his burden of showing that the ineffectiveness of counsel had any prejudicial effect. No relief is warranted.

The findings of guilty and the sentence are correct in law and fact and, on the basis of the entire record, are

AFFIRMED.

Senior Judge LEONARD and Judge RIVES concur.