**UNITED STATES of America, Appellee,**

**v.**

**Ikechukwu AMAHIA, Appellant.**

**No. 86–2492.**

United States Court of Appeals, Eighth Circuit.

Submitted June 11, 1987.

Decided July 30, 1987.

Neil L. Johnson, Kansas City, Mo., for appellant.

Robert B. Schneider, Asst. U.S. Atty., Kansas City, Mo., for appellee.

Before ROSS, Circuit Judge, BRIGHT, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

BRIGHT, Senior Circuit Judge.

The United States charged Ikechukwu Amahia, a Nigerian national, with conspiracy to arrange a fraudulent marriage with the intent to procure an immigrant visa and permanent United States residency status by means of a false statement in violation of 18 U.S.C. § 371 (1982), and with willfully and knowingly making a false statement to the Immigration and Naturalization Service (INS) in violation of 18 U.S.C. § 1546 (1982). After a jury trial in which the jury returned a guilty verdict on both counts, the district court[1] entered a judgment of conviction and sentenced Amahia to concurrent three-year terms of imprisonment on each count. Amahia brings this appeal asserting, *inter alia:* (1) errors in admission of evidence; (2) insufficiency of evidence to support the conviction; and (3) excessiveness of his three-year term of imprisonment under the circumstances. We have reviewed the record and have determined that no prejudicial error exists in the trial and sentence and affirm the conviction.

1. The Honorable D. Brook Bartlett, United States District Judge for the Western District of Missouri.

## I. BACKGROUND

In June of 1983, Amahia entered into a marriage with LaTonya Poncil, a United States citizen. Several persons assisted him in the marriage arrangements—Onyema John Uzo-Echefu, Sylvia Caviness, and Shirley Johnson—all named as unindicted coconspirators. Amahia later provided the INS with evidence of his marriage in order to obtain United States residency. After an INS investigation, the Government sought, and obtained, a superseding indictment[2] against Amahia for entering into a fraudulent marriage in order to obtain United States residency, and for making false statements to the INS.

At trial, Amahia took the stand to testify in his own defense. He testified that he did not give $500 to Poncil to induce her to marry him. Rather, he testified that they married for love and intended to live as husband and wife.

The alleged evidentiary errors raised by Amahia relate to evidence introduced by the Government for impeachment of Amahia's credibility including cross-examination of the defendant concerning prior convictions in state court and evidence of other misconduct. Amahia contends that the Government exceeded proper bounds of cross-examination in introducing testimony relating to his past conduct.

Additionally, the Government through its witness Poncil, the alleged bride for pay, introduced evidence of statements made by Caviness, relayed by co-conspirator Shirley Johnson to Poncil, about the availability of cash for entering into bogus weddings with Nigerians. Amahia asserts that the reception of that evidence amounted to double hearsay which the trial judge should have rejected. We discuss this evidentiary issue in the next section of this opinion.

## II. EVIDENTIARY ISSUES

### A. Impeachment—Details of Prior Convictions and Other Acts

Amahia's prior felony record in state court revealed that Amahia had received monies from several insurance companies for a single collision loss to his vehicle. He also collected twice for the same damage from the insurance carrier which had issued a property damage liability policy on a motor vehicle owned by Amahia's friend Lawrence Ofuokwu. As to four of these claims, Amahia entered guilty pleas to four felony counts of defrauding four insurance companies. As to the fifth claim of insurance fraud, the State of Kansas brought no charge.

In cross-examining Amahia, the Government not only inquired of Amahia about the fact of convictions, but also quoted each count of the indictment, and received an affirmative response from Amahia that Amahia had pleaded guilty to the precise fraudulent act recited in the state charge.

Additionally, the Government cross-examined Amahia about the additional insurance fraud in the State of Kansas for which no criminal charge had been brought.

Amahia's counsel objected to the extensive inquiry about details of Amahia's criminal activity, over and above the mere record of conviction.

The Government, while recognizing that evidence of prior convictions should not relate details about the prior crime, save as to the charge and fact of conviction, justifies its more extensive development of the details of these prior crimes. The Government asserts the extensive cross-examination constituted a proper response to Amahia's direct testimony, which sought to affirmatively erode in the jury's mind, the likely adverse effect of the disclosure of Amahia's earlier crime. Amahia stated that he had gotten into a little bit of trouble in Wichita State Court where he pled guilty to some theft charges on the advice of his "agent" on the assurance that he (Amahia) would receive probation. Amahia further stated that he had pleaded guilty

2. The first indictment against Amahia was issued January 3, 1985. The indictment was dismissed after the testimony upon which it was based was recanted. On July 11, 1986, the grand jury issued a superseding indictment after hearing additional evidence against the defendant.

because of the pressures of school and work outside of school.

We examine Amahia's claim against the usual rules applicable to showing a prior criminal felony record to impeach a testifying defendant.

Rule 609(a) of the Federal Rules of Evidence provides that a criminal conviction may be used to impeach the witness' credibility if the crime was punishable by death or imprisonment for more than a year, and the trial court determines that the probative value outweighs the prejudicial effect on the defendant, or the crime "involved dishonesty or false statement regardless of punishment." Fed.R.Evid. 609(a). Under Rule 609, the witness' credibility may be attacked "by establishing both the fact and nature of the [witness'] prior conviction." *United States v. Moore,* 735 F.2d 289, 293 (8th Cir.1984).

However, the cross-examination of a criminal defendant about his or her prior criminal record merits special care. The details of the prior conviction may be collateral, and the jury may view the evidence of past guilt as an indication of present guilt. *United States v. Brown,* 794 F.2d 365, 366 (8th Cir.1986); *see also United States v. Roenigk,* 810 F.2d 809, 814 (8th Cir.1987).

■ Other cases observe, however, that when a witness "opens the door" by a denial of guilt of the prior conviction, a more detailed cross-examination is permissible. For example, in *United States v. Wolf,* 561 F.2d 1376 (10th Cir.1977), the defendant testified that his prior conviction for making false claims to the United States Government rested on his inability to afford defending the charges and because he entered into a plea agreement in which the other counts would be dismissed

if he pled guilty to one count. *Id.* at 1381. Although recognizing the general rule of impropriety of inquiry by the prosecutor into specific details about prior convictions, the court stated, "[a] different situation is presented when an accused, on direct examination, attempts to explain away the effect of the conviction or to minimize his guilt. In such cases, the defendant may be cross-examined on any facts which are relevant to the direct examination." *Id.* (citation omitted); *see also United States v. Burkett,* 821 F.2d 1306, 1310 (8th Cir.1987); *United States v. Kimberlin,* 805 F.2d 210, 234 (7th Cir.1986); *United States v. Barnes,* 622 F.2d 107, 109 (5th Cir.1980). Moreover, the trial judge is vested with discretion in expanding the limits of cross-examination. *United States v. Brown,* 794 F.2d 365, 366 (8th Cir.1986). On the basis of the record before us, we cannot say that the district court abused its discretion in permitting the Government to inquire extensively concerning some details of the prior convictions.

### B. Specific Instance of Conduct

Amahia also contends the district court erred by allowing the Government to cross-examine him concerning the specific facts of the Ranger Insurance Company fraud, an act for which he was not charged in the state court proceeding. Rule 608(b) of the Federal Rules of Evidence specifically bars extrinsic evidence of specific instances of conduct of a witness to attack credibility.[3]

■ The plain language of Rule 608 gives the district court discretion in allowing inquiry into the specific instances of conduct if the conduct is probative of truthfulness or untruthfulness. In considering admissibility of this sort of evidence, the

---

**3.** Rule 608(b) reads as follows:

Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) con-

cerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

The giving of testimony, whether by an accused or by any other witness, does not operate as a waiver of the accused's or the witness' privilege against self-incrimination when examined with respect to matters which relate only to credibility.

Fed.R.Evid. 608(b).

court balances the relevancy of the question as bearing on honesty and veracity with the prejudicial impact of the statement. *See United States v. Hastings,* 577 F.2d 38, 40–42 (8th Cir.1978); *United States v. Young,* 567 F.2d 799, 803 (8th Cir.1977), *cert. denied,* 434 U.S. 1079, 98 S.Ct. 1273, 55 L.Ed.2d 786 (1978). Rule 608(b) will permit inquiry into the specific acts which may have led to an arrest if those acts related to *crimen falsi, e.g.,* perjury, subornation of perjury, false statement, embezzlement, false pretenses. *United States v. Dennis,* 625 F.2d 782, 798 (8th Cir.1980); *United States v. Kirk,* 496 F.2d 947, 949 (8th Cir.1974). No abuse of discretion is shown by the record. We reject this contention of error.

## C. Poncil's Testimony

### 1. Rule 801(c)

█ Amahia contends that the district court erred in admitting Poncil's recitation of the conversation between herself and Johnson. Amahia argues that the conversation is a restatement of an earlier conversation between Johnson and Caviness and thus constitutes inadmissible double hearsay. The district court, after giving an appropriate limiting instruction, admitted her testimony under Rule 801(c) of the Federal Rules of Evidence to show why Poncil did what she did as a result of the conversation, rather than to show the truth of the matter asserted in that conversation. We believe the district court did not err in admitting the evidence.

█ Under Rule 801(c) of the Federal Rules of Evidence, an out-of-court statement not offered to prove the truth of the matter asserted is not hearsay. Fed.R. Evid. 801(c). A statement not offered for the truth of the matter asserted is not hearsay because reliability, thus truth, is not at issue.

In this case, we are not concerned with the truthfulness of the statement, i.e., whether it is true co-conspirator Caviness wanted names from co-conspirator Johnson of women who would marry Nigerians for money. Rather, the value of the statement is in its explanation of why Poncil put herself in a position to marry Amahia, and it is the fact of the statement, not its truth, which is important. *See United States v. McCrady,* 774 F.2d 868, 872 (8th Cir.1985); *United States v. Stout,* 599 F.2d 866, 869 (8th Cir.1977), *cert. denied,* 444 U.S. 877, 100 S.Ct. 163, 62 L.Ed.2d 106 (1979). The statement was admissible to help the jury in understanding the context and circumstances relating to Poncil's marriage for money. *See United States v. Nicholson,* 815 F.2d 61, 63 (8th Cir.1987).

## D. Sufficiency of the Evidence

Amahia argues there was insufficient evidence presented at trial upon which his conviction could be sustained. In reviewing this claim, the court views the evidence in the light most favorable to the Government, and will sustain the jury's verdict if substantial evidence exists in the record to support that verdict. *United States v. Barker,* 806 F.2d 787, 788 (8th Cir.1986); *United States v. Braidlow,* 806 F.2d 781, 784 (8th Cir.1986). The Government is also entitled to the benefit of all reasonable inferences which may be reasonably drawn from the evidence. *United States v. Casperson,* 773 F.2d 216, 221 (8th Cir.1985). The evidence need not exclude all reasonable hypothesis except guilt, and the essential elements of the offense can be established by circumstantial evidence. *United States v. Nabors,* 762 F.2d 642, 653 (8th Cir.1985). Therefore, the only question which this court must determine on appeal is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Barker,* 806 F.2d at 788 (citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)).

█ The record supports the following scenario. After experiencing financial problems, Amahia and his cousin, John Uzo-Echefu, discussed finding a United States citizen who would agree to enter into a sham marriage with Amahia so that he could obtain United States residency. After arrangements were made by co-conspirators Caviness and Johnson, Poncil

agreed to meet and marry Amahia for $500. Amahia and Poncil were married after which she was paid $250. Although Poncil and Amahia went through a marriage ceremony, the marriage was never consummated.

Poncil was paid $100 before a trip to Kansas City, Missouri. Amahia, Poncil and Uzo-Echefu then traveled to Kansas City to meet with INS officials. Amahia and Poncil, while under oath, knowingly gave material false statements to the INS in order that Amahia be reclassified as a United States resident. After making such statements, Poncil was given $150. Subsequent to Amahia's obtaining United States residency, he applied for, and received, federal student loan money. After an INS investigation, Poncil agreed to cooperate with the Government and tape record a telephone conversation with Amahia. In the conversation, Amahia told Poncil to lie to INS agents about their sham marriage and not to tell them that he had paid her any money to marry him. After reviewing this evidence under the standards set forth above, we reject Amahia's claim of insufficiency of the evidence. The jury possessed ample evidence to convict Amahia.

### E. Sentence

Amahia contends the district court abused its discretion in sentencing him. Amahia was sentenced to three years imprisonment for each of the two counts. The three-year terms are to run concurrently. This court accords the district court wide discretion in its sentencing. *Orner v. United States*, 578 F.2d 1276, 1278 (8th Cir.1978). Thus, if the sentence imposed falls within the statutory limits, this court will not disturb the sentence without a showing of gross abuse of discretion. *United States v. Kirk*, 761 F.2d 463, 465 (8th Cir.1985); *United States v. McMahon*, 744 F.2d 647, 652 (8th Cir.1984).

Amahia might have been sentenced to ten years imprisonment for his convictions on counts I and II of the indictment. Clearly, no abuse of sentencing discretion is shown by the record.

### III. CONCLUSION

Accordingly, we affirm.