**UNITED STATES, Appellee**

v.

**Tommy L. ROBERTSON, Technical Sergeant, U.S. Air Force, Appellant.**

No. 68,330.
CMR No. 28955.

U.S. Court of Military Appeals.

Argued Oct. 6, 1993.

Decided May 31, 1994.

For Appellant: *Captain Ursula P. Moul* (argued); *Colonel Terry J. Woodhouse* (on brief); *Colonel Jay L. Cohen* and *Major Mary C. Yastishock.*

For Appellee: *Captain Timothy G. Buxton* (argued); *Colonel Richard L. Purdon* and *Colonel Jeffery T. Infelise* (on brief); *Lieutenant Colonel Thomas E. Schlegel, Lieutenant Colonel Brenda J. Hollis, Major Morris D. Davis, Captain David C. Wesley.*

*Opinion of the Court*

CRAWFORD, Judge:

Contrary to his pleas, appellant was found guilty, by a general court-martial with members, of using cocaine, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. He was sentenced to a bad-conduct discharge, confinement for 6 months, total forfeitures, and reduction to the lowest enlisted grade. The convening authority approved the sentence, and the Court of Military Review affirmed the findings and sentence. 34 MJ 1206 (1992). We granted review on the following issues:

I

WHETHER THE AIR FORCE COURT OF MILITARY REVIEW ERRED IN HOLDING NO MATERIAL PREJUDICE RESULTED WHEN THE MILITARY JUDGE ALLOWED THE TRIAL COUNSEL, OVER OBJECTION, TO ATTACK THE CREDIBILITY OF MS. MINTER BASED ON HER ARREST FOR CONSPIRACY TO COMMIT FRAUD.

## II

WHETHER THE AIR FORCE COURT OF MILITARY REVIEW ERRED IN HOLDING NO MATERIAL PREJU- DICE RESULTED WHEN THE MILI- TARY JUDGE DID NOT ALLOW A DE- FENSE WITNESS TO TESTIFY THAT APPELLANT WAS LAW–ABIDING.

## III

WHETHER THE AIR FORCE COURT OF MILITARY REVIEW ERRED IN HOLDING NO MATERIAL PREJU- DICE RESULTED WHEN THE AP- PELLANT WAS DENIED POST–TRIAL EFFECTIVE ASSISTANCE OF COUN- SEL.

For the reasons set forth herein, we affirm.

### FACTS

Appellant tested positive for cocaine as the result of a lawful mandatory urinalysis drug test. His defense was innocent ingestion. His roommate, Ms. Minter, a recovering drug addict, testified that several days before appellant's urinalysis test, she had visited a park where she drank beer and purchased almost a gram of cocaine. When the police started to close down the park, she put the cocaine in her beer to avoid being caught with it and drank about half of the beer on her way home. At home she placed the beer on the coffee table and went to the bathroom. When she returned, the beer was gone, and she assumed that appellant had taken it. Appellant testified that he drank the beer, not knowing that it was laced with cocaine.

Dr. Wallace, a government expert witness who testified as to the laboratory report, indicated that the accused's urine showed 628 nanograms of cocaine. Dr. Wallace opined that, even if appellant had ingested the entire amount of cocaine purchased by Ms. Minter in the park and dumped into her can of beer, statistical projections indicate that only 50 to

150 nanograms of cocaine metabolite would be present in appellant's urine 66 hours later. Dr. Wallace further opined that the accused would have had to ingest a "near fatal" amount of cocaine for 628 nanograms of the metabolite to have been present 66 hours later.

### Issue I

 At trial, trial counsel asked Ms. Minter on cross-examination:

Q. Now, you've had some problems with honesty before, haven't you, Miss Min- ter?

A. No.

Q. Do you remember back in September of '84, having some problems—you were arrested for conspiracy to commit fraud, and attempted burglary?

A. I'd rather—I plead the Fifth on that. I don't want to have anything—answer anything about my past that doesn't have anything to do with this case.

After a motion to strike her testimony, the military judge convened a session under Arti- cle 39(a), UCMJ, 10 USC § 839(a), without the members present. At this session the prosecutor argued that both conspiracy to commit fraud and attempted burglary were "directly [related] to her character for truth- fulness." He also indicated there was a "good-faith basis" for the question because it was based upon an FBI report, although he did not know the underlying facts.

Civilian defense counsel argued that a mere arrest not amounting to a conviction could not be used for impeachment purposes. Defense counsel also argued that the evi- dence was inadmissible under Mil.R.Evid. 404(b), Manual for Courts–Martial, United States, 1984.[1] The judge overruled defense counsel's objection.

When the court members reconvened, the prosecutor renewed and emphasized his question and asked Ms. Minter:

---

1. Evidence admissible under Mil.R.Evid. 404(b), Manual for Courts–Martial, United States, 1984, is admissible as substantive evidence on the mer- its, whereas evidence admissible under Mil. R.Evid. 608(b) is only admissible to determine the credibility of the witness. Likewise, Mil.

R.Evid. 608(b) prohibits proving the act by ex- trinsic evidence, whereas under Mil.R.Evid. 404(b), the cross-examiner need not "take the answer" the witness gives concerning Mil. R.Evid. 404(b) matters since extrinsic evidence is admissible.

I was asking a line of questions about, if you had problems in the past with honesty or truthfulness, and you said no. And I asked you if you didn't think that having been arrested in September of 1984 for conspiracy to commit fraud would be something involving honesty and truthfulness. I ask you that again?

She replied, "No." Trial counsel accepted this answer without follow-up questions.

The court below determined that "[a]n arrest *is governmental conduct,* not conduct of the witness." Therefore, they found error in using an arrest for impeachment purposes but found the error to be harmless. 34 MJ at 1208. In *United States v. Toro,* 37 MJ 313, 315 (CMA 1993), we said, "There are three evidentiary stages which concern the credibility of witnesses at trial: bolstering, impeachment, and rehabilitation."

Issue I concerns the impeachment stage. There are numerous methods of impeachment, including use of specific instances of misconduct, prior convictions, contradiction, inconsistent statements, inconsistent acts, bias, and deficiencies in the elements of competency. *Id.* at 315. The method at issue here is impeachment by specific instances of conduct—in this case an arrest for conspiracy to commit fraud and attempted burglary. Mil.R.Evid. 608(b), which is substantially the same as Fed.R.Evid. 608(b), provides:

> Specific instances of conduct of a witness, for the purpose of attacking or supporting the credibility of the witness, other than conviction of crime as provided in Mil. R.Evid. 609, *may not be proved by extrinsic evidence.* They may, however, in the discretion of the military judge, *if probative of truthfulness or untruthfulness,* be inquired into on cross-examination of the witness (1) concerning character of the witness for truthfulness or untruthfulness....

(Emphasis added.) Impeachment under Mil. R.Evid. 608(b) and Fed.R.Evid. 608(b) may not be based merely upon any instance of misconduct but, rather, upon conduct that relates to untruthfulness.[2]

In order to have proper cross-examination as to misconduct relating to untruthfulness: (1) there must be a good-faith belief by the opponent that the conduct occurred; and (2) the conduct must relate to instances of untruthfulness. *Cf. Michelson v. United States,* 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948). As to (1), a rap sheet from a law enforcement agency, in this case the FBI, can furnish the good-faith belief that conduct occurred if it details the underlying facts for the arrest. *People v. Williams,* 228 Cal.App.3d 146, 152, 278 Cal.Rptr. 801, 804 (1991). A prosecutor who is not using a detailed rap sheet or is not acting in good faith can be called to the witness stand at an Article 39(a) session to furnish the basis for his information. *See United States v. Cardarella,* 570 F.2d 264, 268 (8th Cir.1978), *cert. denied,* 435 U.S. 997, 98 S.Ct. 1651, 56 L.Ed.2d 87 (1978). The problem in this case was that the rap sheet did not recite the underlying facts for the arrest. Further trial counsel told the military judge he did not know the underlying facts but only that Ms. Minter was arrested for conspiracy to commit fraud and attempted burglary. It is difficult for us to hold that trial counsel had a good-faith belief that Ms. Minter participated in the alleged crimes when trial counsel did not know the underlying facts of the arrest.

As to (2) and as the Court of Military Review implied, an arrest alone without showing the underlying circumstances is not probative of credibility. 34 MJ at 1208. *See also Michelson v. United States,* 335 U.S. at 482, 69 S.Ct. at 221; 3A Wigmore, *Evidence* § 980a at 835–36 (Chadbourn rev.1970). The questioner must demonstrate that the arrest was based on acts affecting credibility, *United States v. Amahia,* 825 F.2d 177, 181 (8th Cir.1987), or that the arrest record impeaches a witness' assertion that the arrestee enjoys a reputation as a law-abiding person, *Michelson v. United States,* 335 U.S. at 483–84, 69 S.Ct. at 222, or that the arrest shows prior untruthful statements by a testifying

---

2. In my personal view, there are different degrees of probativeness relating to truthfulness starting with a lie, statement of an informant as to misconduct, an arrest, and a conviction.

defendant, *United States v. Farias–Farias,* 925 F.2d 805, 809–11 (5th Cir.1991).

Mil.R.Evid. 608(b) does not define what acts relate to truthfulness or untruthfulness. However, Mil.R.Evid. 609(a)(2) speaks in terms of "dishonesty or false statement." As to what has a bearing on truthfulness, this Court stated in *United States v. Weaver,* 1 MJ 111, 118 n. 6 (1975), the following:

> Acts of perjury, subornation of perjury, false statement, or criminal fraud, embezzlement or false pretense are, for example, generally regarded as conduct reflecting adversely on an accused's honesty and integrity. Acts of violence or crimes purely military in nature, on the other hand, generally have little or no direct bearing on honesty and integrity.

■ Likewise, in *United States v. Leake,* 642 F.2d 715, 719 (4th Cir.1981), the Court held it was improper for the trial judge to preclude the defense from cross-examining the key witness about defrauding an innkeeper and failure to repay loans. These offenses involved instances of untruthfulness. *See also United States v. Owens,* 21 MJ 117, 123 (CMA 1985) (court permitted cross-examination of appellant about "intentional falsehood under oath" in a warrant-officer application); *United States v. Page,* 808 F.2d 723, 730 (10th Cir.1987) (included within Fed. R.Evid. 608(b) would be forgery, uttering forged instruments, bribery, suppression of evidence, false pretenses, cheating, and embezzlement), *cert. denied,* 482 U.S. 918, 107 S.Ct. 3195, 96 L.Ed.2d 683 (1987), disapproved *sub nom. United States v. Williams,* —— U.S. ——, ——, ——, 112 S.Ct. 1735, 1737, 1746, 118 L.Ed.2d 352 (1992); *United States v. Amahia,* 825 F.2d at 181 ("Rule 608(b) will permit inquiry into the specific acts which may have led to an arrest if those acts related to *crimen falsi, e.g.,* perjury, subornation of perjury, false statement, embezzlement, false pretenses"); *United States v. Beros,* 833 F.2d 455, 463 (3d Cir.1987) (lying on marriage license). *Cf. United States v. Newman,* 849 F.2d 156, 161 (5th Cir.1988) (failure to reveal possible arrest for shoplifting and misdemeanor arrest for theft/destruction of private property does not violate *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) because they may not be used for impeachment). Thus, the key to the impeachment question is not the fact of the arrest itself but, instead, whether the underlying facts of the arrest relate to truthfulness or untruthfulness. The record of appellant's trial does not reveal the underlying facts of the conspiracy to commit fraud or the attempted burglary. Obviously, there are various degrees of offenses. We do not know whether the conspiracy to commit fraud was based upon an allegation that the witness signed her spouse's income tax return wherein they took an improper deduction of $25.00 or whether it was based upon something more. We also do not know how far the witness had allegedly gone to commit attempted burglary. Thus, we are unable to determine whether those offenses relate to untruthfulness.

■ Even where there has been a proper showing of the underlying circumstances, there are still some limitations on impeachment by instances of conduct. For example, if the witness denies the conduct, it "may not be proved by .extrinsic evidence." Mil. R.Evid. 608(b). This is unlike impeachment by prior convictions which may be proven through a third party or through appropriate documents. Additionally, the judge has the discretion to require counsel to ask only about the underlying conduct without mentioning the term "arrest." Mil.R.Evid. 403. The judge may also exercise discretion and exclude the testimony altogether, depending on the importance .or lack of importance of the testimony, the age of the conduct, the relationship of the misconduct to truthfulness or untruthfulness, whether the matter would lead to a time-consuming and distracting explanation on cross-examination or recross-examination and undue prejudice. *Cf. United States v. Frazier,* 14 MJ 773, 779 (ACMR 1982), *pet. denied,* 16 MJ 93 (1983).

We hold that the prosecutor met neither prong of the two-prong test for impeachment by specific instances of conduct under Mil. R.Evid. 608(b). Because he did not know the underlying facts, trial counsel was unable to relate them to Ms. Minter's untruthfulness.

We hold the questioning of Ms. Minter about her prior arrest was error. Under the facts of this case, however, we agree with the Court of Military Review that the error was harmless.

### Issue II

■■■ While Issue I concerned impeachment of the witness' credibility, this issue concerns bolstering a witness' credibility by introducing reputation evidence or opinion evidence as to truthfulness and the interrelationship with the character-evidence rules.

The defense called Mrs. McCullough as a character witness. She was a friend of the accused and his landlady at the time of trial. She knew him for 2 years and had shared a residence with appellant for 3 months. After establishing that Mrs. McCullough had known appellant for 2 years, defense counsel asked, "Have you had the opportunity to ever see or hear about Sergeant Robertson ever using any type of drugs?" After a government objection, the defense made an offer of proof that the purpose of the question was to establish "that the defendant is against the use of drugs." The judge sustained the objection and asked defense counsel to reword the question. The defense rephrased the question asking, during the time you've known him, "how would you describe your relationship with him?" Mrs. McCullough responded, and the following colloquy ensued:

As good friends. I don't—you know, I lived, I was living by myself when we was neighbors, and he would take time with my grandkids, or if I needed a ride to the grocery store or to the laundry, or something like that, you know he would take time out and do this for me. And my son was there staying with me, and he was on drugs, and he was stealing from me, and you know, I was going through problems, and I would sit and talk to him about it. And even though he was so dead-set against people on drugs—

TC: We renew our objection, your honor.

MJ: Objection sustained. Members, disregard that testimony as to specific instances of conduct. Mr. Jenkins, lay the

foundation and elicit either opinion, or testimony as to the accused's reputation for a pertinent character trait.

\* \* \*

[CDC]: Mrs. McCullough, do you have an opinion as to the defendant's character and honesty in the community?

A: Well, like I said, he lives with me now, and he goes to church with me, and I know I can speak for while he's living with me, because, you know, he goes to church with me, and everything, and he doesn't do anything there.

CDC: Just a moment, your honor.

Q: What is your opinion of his character?

TC: Your honor, what character trait?

MJ: Mr. Jenkins, what character trait are we asking about?

CDC: How do you describe his character as far as honesty?

TC: Your honor, the accused hasn't placed his character for honesty in issue, because he hasn't taken the stand.

MJ: Mr. Jenkins, what's your response to that?

CDC: Your honor, I think the defendant's honesty is in question because his credibility, as well as whether or not he ingested cocaine back on, or at least had cocaine in his system back on April 18th, 1990, whether or not he did, knowingly. I would suggest to this court that his honesty is in question, as to whether or not he's telling the truth.

MJ: Well, the government objection is sustained. His character for honesty and veracity hasn't been placed in issue because he hasn't testified.

CDC: I agree with that.

MJ: At this point in time it's not a pertinent character trait.

CDC: Okay, your honor. Those are all the questions I have at this time, your honor.

■■■ There are three character-evidence rules that come into play: Mil.R.Evid.

608(a);[3] Mil.R.Evid. 404(a);[4] and Mil.R.Evid. 405(a).[5] Mil.R.Evid. 608(a) addresses bolstering or impeaching with opinion and reputation-type evidence of truthfulness or untruthfulness. Mil.R.Evid. 404(a) and 405(a) deal with introduction of character evidence on the merits. As to admissibility of evidence to prove the accused's character, the key is held by the accused. The prosecution may not in the first instance introduce this kind of evidence, not because it is irrelevant but because it may be too prejudicial. *Michelson v. United States*, 335 U.S. at 475–76, 69 S.Ct. at 218–19.[6]

The Court of Military Review interpreted the witness' testimony that "he was so dead-set against people on drugs" as "analogous to 'law-abiding-ness.'" The court found:

> [We] are confident that the witness would have testified that she believed Sergeant Robertson to be intolerant of drug abuse and abusers. That trait of character would have been relevant as tending to make more probable the defense theory that his ingestion was innocent. We will assume that the inquiry should have been permitted.

3. Mil.R.Evid. 608(a) provides:

*Opinion and reputation evidence of character.* The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

4. Mil.R.Evid. 404(a) provides:

*Character evidence generally.* Evidence of a person's character or a trait of a person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion, except:
*(1) Character of the accused.* Evidence of a pertinent trait of the character of the accused offered by an accused, or by the prosecution to rebut the same....

5. Mil.R.Evid. 405(a) provides:

*Reputation or opinion.* In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by

34 MJ at 1209. However, the burden is upon the proponent to set forth or make an offer of proof of his or her evidence. Mil.R.Evid. 103(a)(2). Here the judge specifically asked defense counsel to lay a proper foundation for Mrs. McCullough's opinion of appellant's reputation, but defense counsel failed to do so. In order to be admitted on the merits, character evidence must relate to a "pertinent [character] trait." Mil.R.Evid 404(a). The judge asked what character trait civilian defense counsel was seeking to prove by Mrs. McCullough's testimony; counsel asserted it was "character as far as honesty." The judge responded that this would not be admissible because appellant's character for honesty had not yet been placed in issue because appellant had not testified. Counsel neither sought to have Mrs. McCullough's testimony introduced to prove what was at issue nor to recall her following appellant's testimony or ask for conditional admission of the evidence based on appellant's anticipated testimony.

Based on the responses from defense counsel, we hold that the judge did not err in precluding testimony as to the accused's honesty.

testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.

6. "Courts that follow the common-law tradition almost unanimously have come to disallow resort by the prosecution to any kind of evidence of a defendant's evil character to establish a probability of his guilt. Not that the law invests the defendant with a presumption of good character, but it simply closes the whole matter of character, disposition and reputation on the prosecution's case-in-chief. The State may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime. The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge. The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice." (Footnotes and citation omitted.)

## Issue III

At trial civilian defense counsel indicated that he would represent the accused concerning the staff judge advocate (SJA)'s post-trial recommendation. After the statutory 10–day response period had expired, defense counsel asked for approximately a 36–day delay to respond to the SJA's post-trial recommendation. This was denied, but defense counsel was granted an 8–day delay. In the meantime appellant filed a 17–page handwritten personal commentary on his trial. Civilian defense counsel never filed a document.

Military defendants are entitled to the effective assistance of counsel during the post-trial appellate processes. *United States v. Palenius,* 2 MJ 86 (CMA 1977). After trial, when there is representation by civilian counsel, it is advisable for the military judge, as was done in this case, to determine on the record who will represent appellant.

In determining whether this counsel was effective we apply the two-prong *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) standard: (1) whether counsel was reasonably competent and (2) if not, whether the accused was prejudiced. *See also Lockhart v. Fretwell,* —— U.S. ——, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993); *United States v. Scott,* 24 MJ 186 (CMA 1987).

There are various post-trial responsibilities of defense counsel during the four levels of post-trial review. There are two mandatory reviews, first by the convening authority and second by the Court of Military Review. The third review is, in most cases, by a discretionary appeal to the United States Court of Military Appeals. Finally, if the case is decided by our Court, then the fourth review is by a writ or a discretionary appeal to the United States Supreme Court.

As to the first review, the one at issue here, there are numerous actions appellant's counsel can take. Counsel may petition for deferment of confinement, respond to the SJA's recommendation, or even assist appellant in putting family affairs in order. Regardless of indigency, an appellant whose sentence includes a punitive discharge is entitled to a verbatim record of trial. Art. 54, UCMJ, 10 USC § 854. This record of trial is to be served on the defense, along with the SJA's recommendation. Certainly there is a denial of effective assistance of counsel when counsel is not "conflict free." *United States v. Leaver,* 36 MJ 133 (CMA 1992).

Under the facts of this case, we hold that appellant has not met his burden of showing that counsel did not exercise reasonable diligence in submitting post-trial matters for appellant. Based on the presumption of competence set forth in *Strickland, see* 466 U.S. at 689, 104 S.Ct. at 2065, appellant has the burden of showing that his counsel was deficient and that the deficiency prejudiced him, *see id.* Appellant has not carried that burden.

The decision of the United States Air Force Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judges COX, GIERKE, and WISS concur.