UNITED STATES, Appellee,

v.

Sergeant Charles H. LEE, United
States Army, Appellant.

ARMY 9600243.

U.S. Army Court of Criminal Appeals.

June 26, 1998.

tenant Colonel Frederic L. Borch III, JA; Major Lyle D. Jentzer, JA (on brief).

Before TOOMEY, Senior Judge, TRANT and CARTER, Appellate Military Judges.

## OPINION OF THE COURT

TRANT, Judge:

Contrary to his pleas, a general court-martial composed of officer and enlisted members convicted appellant of conspiracy (three specifications), false official statement, larceny (five specifications), forgery (four specifications), making and uttering worthless checks (two specifications), wrongful possession, use and transfer of military identification cards, and wrongful use of a counterfeit credit device pursuant to 18 U.S.C. § 1029(a), in violation of Articles 81, 107, 121, 123, 123(a), and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 907, 921, 923, 923(a) and 934 (1988) [hereinafter UCMJ]. The approved sentence is a bad-conduct discharge, confinement for sixty months, forfeiture of all pay and allowances, and reduction to Private E1.

Appellant avers that the military judge abused his discretion when he prevented the defense from cross-examining a government witness concerning an alleged specific act of attempted bribery to attack that witness' character for truthfulness. We disagree.

### Facts.

Appellant convinced Specialist (SPC) McCray and Private First Class (PFC) Robertson, two clerks who worked in the military identification (ID) card section of his unit, to steal ID cards which had been turned in by unit members for reissue, and give them to appellant. Appellant told SPC McCray that he needed the ID cards because he was having financial difficulty and told PFC Robertson that he needed the ID cards to help some underage friends get into night clubs. Neither clerk was aware at the time of the offenses that the other clerk was also giving ID cards to appellant or that appellant was using the stolen ID cards to cash stolen checks.

For Appellant: Captain Thomas Jay Barrett, JA (argued); Colonel John T. Phelps II, JA; Lieutenant Colonel Michael L. Walters, JA; Major Leslie A. Nepper, JA (on brief).

For Appellee: Captain Troy A. Smith, JA (argued); Colonel Joseph E. Ross, JA; Lieu-

Appellant traded several of the stolen ID cards to Mr. Clemens, a civilian, in exchange for some blank checks that Clemens had previously stolen from Ms. M. Two of appellant's accomplices, Ms. Baker and Ms. Shelton, also broke into Ms. F's mailbox, opened her mail to ascertain her social security account number (SSAN), used the SSAN to obtain a Louisiana ID card, and used the ID card to open a bank account in F's name and obtain checks on that account. Baker, Shelton and appellant made fifteen checks (totaling $2,250.00) on M's account and seven checks on F's account (totaling $1,050.00), payable to the soldiers whose ID cards had been stolen, and cashed them using the stolen ID cards. Baker wrote five additional checks on an account with insufficient funds using the stolen ID cards. Appellant opened a Montgomery Wards charge account using a stolen ID card of SFC D and fraudulently charged hundreds of dollars on this account.

At trial, the government called three witnesses (a Montgomery Wards store manager, a Post Exchange (PX) dishonored check officer, and a bank security officer) to lay the foundation for the forged checks and other financial records, and seven victim witnesses to disavow the making or uttering of any of the bad checks or credit debts. SPC McCray and PFC Robertson, both of whom were pending decisions on administrative discharges in lieu of courts-martial, testified that they wrongfully gave the ID cards to appellant. Baker and Shelton, both of whom were pending criminal charges in federal court for their involvement in these crimes, testified without immunity as to their extensive involvement in assisting appellant in his bad check schemes. Appellant's pretrial statement to a Criminal Investigation Command (CID) agent, in which appellant denied committing any of the offenses and denied knowing Baker, was introduced into evidence. Finally, two CID forensic laboratory experts (questioned documents and fingerprints) testified that appellant had forged some of the stolen documents and his fingerprints were found on some of the forged documents. Appellant's evidence consisted of two favorable character witnesses, one witness to disparage SPC McCray's character for truthfulness, and appellant's own testimony denying all of the offenses, including a highly implausible explanation for how his fingerprints came to be on the forged checks and other documents.

Discussion.

■ Prior to trial, the government made a motion in limine to prevent the defense from cross-examining Baker about an alleged attempted bribery of a military policeman (MP). While incarcerated in the "detox" cell at Fort Hood, Texas, for communication of threats, Baker allegedly asked one of the MP guards to come forward and then said, "I want to get out of here. How much money do you want? I'll pay you money to let me out of here." The defense asserted that this amounted to attempted bribery and, as such, was a *crimen falsi* act which was admissible in cross-examination. The military judge found that, under the circumstances, this act was not a *crimen falsi* act and was not probative of truthfulness or untruthfulness.

Military Rule of Evidence 608(b) [hereinafter Mil.R.Evid.] provides:

Specific instances of conduct of a witness, for the purpose of attacking or supporting the credibility of a witness ... may ... in the discretion of the military judge, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness ... concerning character of the witness for truthfulness or untruthfulness.

While Mil.R.Evid. 608(b) does not specifically enumerate which acts pertain to truthfulness or untruthfulness, the United States Court of Military Appeals (now United States Court of Appeals for the Armed Forces) noted:

Acts of perjury, subornation of perjury, false statement, or criminal fraud, embezzlement or false pretenses are, for example, generally regarded as conduct reflecting adversely on an accused's honesty and integrity. Acts of violence or crimes purely military in nature, on the other hand, generally have little or no direct bearing on honesty and integrity.

*United States v. Weaver*, 1 M.J. 111, 118 n. 6 (C.M.A.1975). In *United States v. Robertson*, 39 M.J. 211 (C.M.A.1994), the government sought to impeach a key defense witness by inquiring on cross-examination about

a prior arrest for conspiracy to commit fraud and attempted burglary. The court held that "the key to the impeachment question is not the fact of the arrest itself but, instead, whether the underlying facts of the arrest relate to truthfulness or untruthfulness" and that "the judge has the discretion to require counsel to ask only about the underlying conduct without mentioning the term 'arrest.'" *Robertson,* 39 M.J. at 215. Because the record of trial did not contain the underlying facts of the conspiracy to commit fraud or the attempted burglary, the court was unable "to determine whether those offenses relate[d] to untruthfulness." *Robertson,* 39 M.J. at 215. Thus, the touchstone of admissibility is the logical connection between the underlying *conduct* and the witness' veracity.

Appellant invites this court to initially focus on whether the alleged act (attempted bribery) is included within the category of *crimen falsi* offenses. While that term has a hoary tradition,[1] it is not the *sine qua non* of admissibility. It matters not whether attempted bribery has ever attained the designation of a *crimen falsi* offense. Indeed, with the exception of bribery to suppress testimony, there is scant historical mention of bribery within the legal literature on *crimen falsi* offenses.[2] We choose to focus, as the military judge did, on the underlying conduct, not on the label that counsel choose to attach to the act, to determine if the *conduct* is "probative of truthfulness or untruthfulness."

Appellant relies upon military (*United States v. Cantu,* 22 M.J. 819, 824 (N.M.C.M.R.1986)) and federal (*United States v. Leake,* 642 F.2d 715, 718 (4th Cir. 1981)) cases which recite a litany of instances of misconduct, to wit, perjury, subornation of perjury, false statement, fraud, swindling, forgery, bribery, false pretenses, and embez-

zlement, that those courts state are clearly probative of truthfulness or untruthfulness. Because bribery was not at issue in those cases, appellant's reliance on the dicta therein is unpersuasive.[3] The government relies upon the holding of *United States v. Rosa,* 891 F.2d 1063, 1069 (3rd Cir.1989) that bribery "is not the kind of conduct which bears on truthfulness or untruthfulness." We decline to adopt a rule that categorically includes or excludes bribery as an instance of misconduct that is clearly probative of truthfulness or untruthfulness.

Instead, we rely upon a case cited by both counsel, *United States v. Hurst,* 951 F.2d 1490 (6th Cir.1991), which contains a more flexible approach. In *Hurst,* the defendant admitted on direct examination that he had an earlier conviction for obstruction of justice. The prior conviction "stemmed from a prosecution for bank robbery in which [the defendant] offered a bribe to a police chief in an attempt to have the officer file a false document creating an alibi for the defendant." *Hurst,* 951 F.2d at 1500. The court held that the government was not bound by the nomenclature of the offense (obstruction of justice) and was permitted to cross-examine the defendant with the details of the *conduct* (bribery) that was probative of truthfulness or untruthfulness. The court found that the trial judge was well within his discretion in concluding that the *conduct* was probative of veracity as the "conduct was not merely bribery, as [defendant] argues, but subornation of perjury." *Hurst,* 951 F.2d at 1501. The *Hurst* court disagreed with *Rosa* to "the extent that [*Rosa*] might be read to suggest that bribery-related offenses are not probative of a witness' truthfulness or untruthfulness *in all cases.*" *Hurst,* 951 F.2d at 1501 (emphasis added). Bribery may or may not be a permissible subject of inquiry

---

1. *See United States v. Smith,* 551 F.2d 348, 362 n. 26 (D.C.Cir.1976)(concise history of the derivation of *crimen falsi* in Roman law and its development in the common law).

2. *See* 1 S. GREENLEAF, A TREATISE ON THE LAW OF EVIDENCE § 373 (16th ed. 1899); *see, e.g.,* 3 J. WEINSTEIN & M. BERGER, WEINSTEIN'S EVIDENCE para. 608[05] at 608–66 to 608–87 (1996); 2 McCORMICK ON EVIDENCE § 41 at 138 n. 5 (W. Strong ed., 4th ed.1992).

3. There are other federal cases, not relied upon by appellant, in which bribery was in issue (*see, e.g., United States v. Tomblin,* 46 F.3d 1369 (5th Cir.1995); *United States v. Wilson,* 985 F.2d 348 (7th Cir.1993)). In those cases, however, because there was a conclusional incorporation of bribery within the *crimen falsi* offense category *without any analysis of the underlying conduct,* we find them similarly unpersuasive.

on cross-examination under Mil.R.Evid. 608(b) depending on the probative effect, if any, that the underlying *conduct* has on the veracity of the witness.

Cross-examination of a witness regarding Mil.R.Evid. 608(b) specific instances of misconduct is within the discretion of the military judge. *United States v. Stavely*, 33 M.J. 92, 94 (C.M.A.1991). In making this determination, the military judge has broad, but not unfettered, discretion. The military judge's ruling to admit or exclude evidence, including that on cross-examination, will be reviewed for an abuse of discretion. *See United States v. Gray*, 40 M.J. 77, 80 (C.M.A. 1994); *United States v. Lauture*, 46 M.J. 794, 799 (Army Ct.Crim.App.1997). Applying an abuse of discretion standard, we will reverse the military judge's determination only if we find it to be "arbitrary, fanciful, clearly unreasonable" or "clearly erroneous." *United States v. Travers*, 25 M.J. 61, 62 (C.M.A. 1987) (quoting *United States v. Glenn*, 473 F.2d 191, 196 (D.C.Cir.1972)).

In *Robertson*, the court provided some guidance to trial judges concerning what factors may be considered in exercising their discretion by holding that:

> The judge may also exercise discretion and exclude the testimony altogether, depending on the importance or lack of importance of the testimony, the age of the conduct, the relationship of the misconduct to truthfulness or untruthfulness, whether the matter would lead to a time-consuming and distracting explanation on cross-examination or recross-examination and undue prejudice.

*Robertson*, 39 M.J. at 215 (citation omitted). This is similar to guidance generally used in federal courts. *See United States v. Atwell*, 766 F.2d 416 (10th Cir.1985).

In his essential findings of fact, the military judge in the instant case stated: It would appear to me that the circumstances of that incident are not probative of truthfulness or untruthfulness, and that's the test in [Mil.R.Evid.] 608(b). Assuming for the moment that the witness, Baker, did offer the MP money to have him improperly release her from confinement or her confined status, I find that, under those circumstances, is not *crimen falsi* .... [A]ll of those offenses [listed in *Cantu*], I think, are relevant to *crimen falsi*, from the standpoint of being conduct which somehow reflects on giving misrepresentations or requesting someone else to falsify something. There's some degree of falsity in the actions that are involved in those offenses. The circumstances that have been presented regarding this incident with the MP don't involve honesty or truthfulness. They appear an attempt to get the guard to violate his duties by letting her out of jail. I find that the circumstance is not probative of truthfulness or untruthfulness on the part of Baker.

The military judge clearly and appropriately focused on the third *Robertson* factor, to wit, "the relationship of the misconduct to truthfulness or untruthfulness." Appellant asserts that implicit in Baker's request was a request to falsify the jail records or lie about how Baker escaped. The military judge did not find such an inference to be ineluctable. Given that being in jail was not a new experience for Baker, her ambiguous request might even be construed as a request to post bail or pay the standard fine. As the military judge's ruling is not arbitrary, fanciful, clearly unreasonable or clearly erroneous, we find that he did not abuse his discretion in determining that the alleged conduct was not probative of truthfulness or untruthfulness, and we will not disturb his decision on appeal.

Even if we were to assume, arguendo, that appellant's right to confrontation was unduly limited by the military judge's ruling prohibiting the subject cross-examination, remedial action is appropriate only if that error materially prejudices a substantial right of appellant. *See* Article 59(a), UCMJ; *United States v. Adams*, 44 M.J. 251, 253 (1996)(Cox, C.J., concurring).[4] Prejudice is not presumed; this court must

---

4. Pursuant to Mil.R.Evid. 103(a), error may not be predicated upon a ruling by a military judge admitting or excluding evidence unless the ruling materially prejudices the substantial rights of the accused.

test for harm.[5] The United States Court of Appeals for the Armed Forces has held that:

> The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

*United States v. Williams,* 40 M.J. 216, 218–19 (C.M.A.1994)(citing *Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)).

 While Baker was certainly an important government witness, she was not the indispensable nucleus that appellant asserts her to be. The evidence against appellant was overwhelming. Each one of his co-conspirators testified fully and consistently against him, forensic fingerprint and handwriting evidence positively linked him to the crimes, and his lame attempt to explain away the forensic evidence was completely ineffectual.

The trial defense counsel effectively attacked Baker's credibility on cross-examination by eliciting the following admissions from her: she was a co-conspirator and had stolen many of the checks that the co-conspirators had cashed; she was pending federal charges for her role in these offenses; she was testifying to benefit herself; she had stolen checks from her dying father (an am-

putee and retired veteran) on a previous occasion; she was sentenced to probation for stealing another person's check and cashing it; she had been convicted for providing false information to a police officer; she had two aliases; she initially lied about her identity to CID; and, she lied and exaggerated in her sworn statement to CID. Given this plethora of damaging admissions, the further diminution of Baker's veracity based on the excluded cross-examination would have been negligible. After giving full consideration to the facts and circumstances of this case, we find that, if error occurred, it was harmless beyond a reasonable doubt. *See United States v. Bins,* 43 M.J. 79, 86 (1995). Accordingly, there was no violation of the Confrontation Clause requiring reversal of appellant's conviction. *See Van Arsdall,* 475 U.S. at 673, 106 S.Ct. 1431.

We have considered appellant's eight assignments of error asserting unreasonable multiplication of charges and failure to merge certain specifications, one assignment of error asserting that statements made by suspects are not "official statements," and the matters submitted by appellant pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982), and find them to be without merit.

The findings of guilty and the sentence are affirmed.

Senior Judge TOOMEY and Judge CARTER concur.

---

5. "Before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *United States v. Ward,* 1 M.J. 176 (C.M.A.1975).